**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Emerson M. Anderson, | : | Case No. 5:09 CV 159 |
| Petitioner, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Timothy Brunsman, Warden, | : | |
| Respondent. | : | |

This case, filed pursuant to 28 U.S.C. § 2254[1], was automatically referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2(b)(2)[2]. Pending are (1) Petitioner's Petition for Writ of Habeas Corpus (Docket No. 1), (2) Petitioner's Motion for a Copy of Record of Trial Proceedings (Docket No. 5); (3) Respondent's Motion to Dismiss Petition (Docket No. 8); and (4) Petitioner's Motion for Summary Judgment and Respondent's Response (Docket Nos. 11 & 12). For the reasons that follow, the

---

[1]
   The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
   28 U.S.C.A. § 2254 (Thomson/West 2007).

[2]
   The Clerk shall refer all *pro se* petitions for habeas corpus filed under 28 U.S.C. § 2254, provided such petition has first been reviewed by the Court pursuant to 28 U.S.C. § 1915(d) and Rule 4 of the Rules Governing § 2254 Cases and a decision has been made to require a response to the petition, to a Magistrate Judge for a Report and Recommendation as provided in Local Rule 72.1, *Duties of United States Magistrate Judges*.

Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus, deny the Motion for Copy of Record as moot, grant the Motion to Dismiss, deny the Motion for Summary Judgment as moot and terminate the referral to the undersigned Magistrate.

## I. FACTUAL BACKGROUND

Based upon its review of the record, the Court of Appeals for the Ninth District in Summit County, Ohio, found that a reasonable jury could have believed the testimony and evidence proffered by the State at petitioner's trial. The jury heard testimony from the State's fifteen witnesses, including the three victims, the detective, a social worker and the examining doctor. The record was clear that all three of the victims were under the age of thirteen and were not Petitioner's spouses. Additionally, all three victims identified Petitioner as the perpetrator and each described their sexual assaults:

> K.F., the oldest victim, testified that the first incident occurred when she was nine years old. K.F. walked past Petitioner's bedroom while he was watching pornography. Upon seeing her, Petitioner said "Let's watch this." While viewing the pornography, Petitioner told K.F. "Let's do this." Petitioner proceeded to have K.F. remove her clothing, lie on his bed, and performed oral sex on K.F. for a few seconds. Petitioner then had vaginal intercourse with K.F. for a few minutes until K.F. pushed him away and ran out of the room with her clothes. K.F. further testified that Petitioner performed oral sex and had vaginal intercourse with her on two other occasions after she turned ten years old. Additionally, Petitioner showed K.F. pictures of his penis that he had taken with the camera on his cell phone. K.F. and her mother both testified that K.F. was struggling in school during the time of the sexual conduct and contact. However, K.F.'s grades have improved since she began attending counseling sessions regarding these incidents. Carol Anderson, Petitioner's mother, recognized a change in K.F.'s behavior during this time. Mrs. Anderson noticed that K.F. was sad, quiet, and angry. Additionally, she noted that K.F. was reluctant to get up and sing in front of the church congregation. Detective Robinson also commented that during the investigation, K.F. was the saddest of the three victims.
>
> J.F. was seven years old when Petitioner began showing her pictures of his penis on his cell phone. J.F. testified that Petitioner "snatched" her from the hallway, took her into his bedroom, removed her clothes and pushed her on the bed. Petitioner then spread J.F.'s legs and performed oral sex on her. Additionally, Petitioner attempted to have anal sex with J.F. J.F. stated that Petitioner would wear yellow, blue and green rings on his penis and that Petitioner had also showed her pornography on television. During her interview with the social worker, J.F. also stated that Petitioner had licked her breasts. The social worker

testified that while J.F. was confused as to the timeline of these events, J.F. clearly knew what sexual conduct and contact had occurred between her and Petitioner.  J.F.'s parents testified that she is in special education classes for her speech and is very emotional.

R.F., the youngest victim, was five years old when Petitioner also showed her pictures of his penis on his cell phone.  R.F. testified that Petitioner would use the cell phone to take pictures up under her skirt. R.F. described how Petitioner would come into her room at night, pick her up while she was sleeping and take her into his bedroom. R.F. would pretend she was asleep as Petitioner removed her pants, rubbed Vaseline on his penis and had vaginal intercourse with her.  Petitioner also would touch R.F.'s buttocks and put his fingers under her pants while giving her piggy back rides.  Prior to R.F.'s testimony regarding the sexual conduct, the trial court inquired of R.F. regarding the difference between real and make believe and truth and lies.

The victims' mother testified that the girls no longer wanted to live in the same neighborhood as the Petitioner.  In fact, they wanted to move in with their aunt because Petitioner did not know where their aunt lived.  Both parents and their cousin noted that the girls were glad when Petitioner moved out of their home, but at the same time had questions about Petitioner.  K.F. and R.F. both testified that they were happy that Petitioner moved out, while J.F. was sad and did not understand.

Petitioner relied on Detective Robinson's testimony that children sometimes make false allegations or believe something happened that did not.  However, Detective Robinson followed up by stating that false allegations usually occur with teenage girls telling inconsistent stories.  In this case, the victims were all under the age of ten and their accounts of the sexual conduct and contact remained consistent.  Based on her investigation, Detective Robinson did not believe that the victims were making false allegations.  Additionally, Petitioner relied upon the social worker's testimony that coaching of the victims by an adult is a possibility.  However, the social worker did not believe that any of Petitioner's victims had been coached.

Petitioner focused on the victims' two year delay in reporting the sexual conduct and contact and their lack of physical injuries to attack their credibility. However, Dr. Steiner, explained that children do not disclose immediately because they feel bad, guilty, or embarrassed or they have been threatened or groomed.  Additionally, Dr. Steiner testified that the lack of physical injury does not negate allegations of sexual abuse. He explained that after 72 hours, physical evidence of abuse disappears due to the healing process.  There is also a lack of scarring or residual tissue damage due to the healing properties of the mucosal lining in the genitalia. Dr. Steiner stated that the victims' behavior was consistent with sexual abuse, but admitted on cross-examination that it is not conclusive of sexual abuse.  Nonetheless, Dr. Steiner diagnosed all three girls as victims of sexual abuse.

*State v. Anderson*, 2007 WL 101790, *5-6 (2007).

## II.  PROCEDURAL BACKGROUND

During the July and November 2005 terms, the Grand Jury for Summit County, Ohio, indicted Plaintiff on seven counts of rape, a violation of OHIO REV. CODE § 2907.02(A)(1)(b) (Counts One, Two, Three, Seven, Eight, Nine and Ten), six counts of gross sexual imposition, a violation of OHIO REV. CODE § 2907.05(A)(4) (Counts Four, Five, Six, Eleven, Twelve and Thirteen) and one count of menacing by stalking, a violation of OHIO REV. CODE § 2903.211(A) (Count Fourteen).  In Supplement II to the indictment issued during the November 2005 term, the Grand Jury issued three specifications designating Petitioner as a sexually violent predator pursuant to OHIO REV. CODE § 2941.148 as defined in Section 2971.01(H) (Docket No. 8, Exhibits 1, 2 & 3).

On January 24, 2006, a jury was duly empaneled and the trial commenced.  Counts One, Two, Three, Four, Five and Six and Specifications to Counts Seven, Eight and Nine set forth in Supplements I and  II to the indictment were dismissed, and the remaining charges were renumbered (Docket No. 8, Exhibit 7). On January 27, 2006, the jury returned a verdict finding Petitioner guilty of the crime of rape as charged in Counts One, Two, Three and Four, guilty of the crime of gross sexual imposition as charged in Counts Five, Six and Seven and guilty of menacing by stalking as charged in Count Eight  (Docket No. 8, Exhibit 7).

At sentencing on March 15, 2006, Counts Five, Six and Seven were merged with Counts One, Two, Three and Four for purposes of sentencing.  Judge Joyce J. George committed Petitioner to the Ohio Department of Rehabilitation and Corrections for a definite, mandatory term of life on Counts One, Two, Three and Four and a definite term of one year for the crime of menacing by stalking.  The sentence imposed in Counts One and Two were ordered to be served concurrently; the sentence imposed in Count Three was to be served  consecutively and not concurrently with the sentence imposed in Count One; the

sentence imposed in Count Four was to be served consecutively and not concurrently with the sentence imposed in Counts One and Three, and the sentence imposed in Count Eight was to be served concurrently and not consecutively with Count One.  The total sentence imposed in this case was three life terms with eligibility for parole after thirty years (Docket No. 8, Exhibit 10).

Petitioner filed a notice of appeal on April 19, 2006 (Docket No. 8, Exhibit 11).  In his brief he presented two assignments of error[3] (Docket No. 8, Exhibit 12).  On January 17, 2007, the Court of Appeals for the Ninth Judicial District affirmed the conviction (Docket No. 8, Exhibit 14).

On December 27, 2006, Petitioner filed a motion to vacate judgment of conviction (petition for post-conviction relief) in the Court of Common Pleas for Summit County, Ohio[4] (Docket No. 8, Exhibit 15).  On January 23, 2007, the petition for post-conviction relief was denied (Docket No. 8, Exhibit 17).  Petitioner filed an appeal in the court of appeals on February 21, 2007 (Docket No. 8, Exhibit 18).  The court dismissed the appeal, *sua sponte*, on April 30, 2007 (Docket No. 8, Exhibit 19).

On June 28, 2007, Petitioner filed a motion for reconsideration in the court of appeals (Docket No. 8, Exhibit 20).  The court of appeals denied the motion for reconsideration on July 9, 2007 (Docket No. 8, Exhibit 21).  Petitioner filed a notice of appeal and supporting memorandum in the Ohio Supreme Court on August 17, 2007[5] (Docket No. 8, Exhibits 22 & 23).  On January 1, 2008, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal (Docket No. 8, Exhibit 24).

---

[3] Petitioner's convictions for rape and gross sexual imposition were against the manifest weight of the evidence. Petitioner's conviction for rape under Count One of the Indictment was based upon insufficient evidence of the element of force (Docket No. 8, Exhibit 12).

[4] Petitioner alleged that (1) he did not have the effective assistance of counsel, (2) the prosecutor engaged in misconduct which prejudiced the jury and (3) the court failed to protect his right to a fair and speedy trial.

[5] Petitioner alleged that he was deprived of the right to the effective assistance of counsel and that he was not brought to trial within 90 days after arrest.

Petitioner filed a motion for delayed appeal on July 17, 2007, in the Ohio Supreme Court[6] (Docket No. 8, Exhibit 25). On August 29, 2007, Chief Justice Thomas J. Moyer denied the motion for delayed appeal (Docket No. 8, Exhibit 26).

On October 9, 2007, Petitioner filed a motion to reopen the appeal in the appellate court[7] (Docket No. 8, Exhibit 27). The State of Ohio filed an opposition on October 23, 2007 (Docket No. 8, Exhibit 28). The court of appeals denied the motion on November 13, 2007 (Docket No. 8, Exhibit 29).

On March 31, 2008, Petitioner filed a motion of leave to submit an amended application for reopening (Docket No. 8, Exhibit 30). The motion was denied on April 3, 2008 (Docket No. 8, Exhibit 31). Petitioner filed a notice of appeal in the Ohio Supreme Court on April 15, 2008 (Docket No. 8, Exhibit 32). Chief Justice Moyer dismissed the appeal on July 29, 2008 (Docket No. 8, Exhibit 34).

### III. JURISDICTION

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)). The "in custody" requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty. *Id.* (*citing Hensley v. Municipal Court*, 93 S. Ct. 1571, 1574-1575 (1973)).

Petitioner was convicted in the Summit County, Ohio, Court of Common Pleas. He is presently in

---

[6] Petitioner alleged that he failed to file a timely appellate brief because he relied on counsel.

[7] Petitioner alleged that his convictions of rape and menacing were based on insufficient evidence, he was deprived of due process and a fair trial, he was denied the effective assistance of counsel, and the prosecutor engaged in deliberate misconduct.

6

custody at the Lebanon Correctional Institution.  Petitioner meets the "in custody" requirements of the habeas statute.

Petitioner alleges twenty-nine grounds on which he seeks relief.  Such allegations, if true, are sufficiently phased to demonstrate that rights guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution were violated.  This Court has jurisdiction to conduct habeas review.

## IV.  HABEAS CORPUS STANDARD OF REVIEW

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA) govern the district court's review of a state court decision.  *French v. Jones,* 332 F.3d 430, 435-436 (6th Cir. 2003), *cert. denied,* 124 S. Ct. 581 (2003).  The AEDPA only provides habeas relief for a state prisoner in certain circumstances.  *Id.*  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Id.* (*citing* 28 U.S.C. § 2254(d) (2001)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Id.*  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*

## V. PROCEDURAL BARRIER TO REVIEW OF THE PETITION FOR WRIT

In the Motion to Dismiss, Respondent contends that the Petition is time barred. Petitioner claims, without elaboration, that his claims are properly before court.

*1.     Statute of Limitations and Equitable Tolling Standards*

AEDPA imposes a one year statute of limitations for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a state judgment. *Allen v. Yukins,* 366 F.3d 396, 399 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 2000 (2004). The limitation period shall run from the latest of four circumstances, one of which is the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C.A. § 2244 (d)(1) (A) (Thomson Reuters 2009). A habeas petition that does not comply with the one year period of limitation set forth in Section 2244(d)(1) must be dismissed. *Flannery v. Wilson,* 2006 WL 1587376, *2 (N. D. Ohio 2006) (*citing Isham v. Randle,* 226 F.3d 691, 694-695 (6th Cir. 2000) *cert. denied*, 121 S. Ct. 1211 (2001). The one year period begins when the judgment becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* (*citing* 28 U.S.C. § 2244(d)(1)(A)). A judgment becomes final within thirty days of the state trial court's judgment if the prisoner fails to file a timely appeal in the state court. *Id.* (*citing* OHIO R. APP. PROC. § 4(A)).

The one year limitation period may be tolled. *Valentine v. Francis,* 270 F.3d 1032, 1034 (6th Cir. 2001) *cert. denied*, 122 S. Ct. 2626 (2002). Specifically, the time during which a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *Id.* (*citing* 28 U.S.C. § 2244(d)(2)). However, pursuant to the terms of § 2244(d)(2), the state court petitions and applications must be both "pending" and "properly filed" in order to stay the AEDPA's one-year period of limitation.

*Monroe v. Jackson,* 2009 WL 73905 *2 (S. D. Ohio 2009) (*citing* 28 U. S. C. § 2244(d)(2)). An application is filed when it is delivered to and accepted by the appropriate court officer for placement into the official record. *Walker v. Smith*, 360 F. 3d 561, 563 (6th Cir. 2004). A post-conviction petition is properly filed when its delivery and acceptance comply with the applicable rules and laws governing filings. *Id.* Untimely motions are not "properly filed" and will not stop the one-year clock. *Monroe*, *supra*, 2009 WL 73905 at *2 (*citing Artuz v. Bennett,* 121 S. Ct. 361, 363 (2000)).

2.   *Application of the Statute of Limitations to Petitioner's Case*

The court of appeals affirmed Petitioner's conviction and sentence on January 17, 2007 (Exhibit 14). The forty five days within which Petitioner could have perfected an appeal to the Ohio Supreme Court as required by under Rule II, Section 2(A)(1)(a) of the RULES OF PRACTICE OF THE SUPREME COURT OF OHIO, commenced on January 18, 2007, and expired on March 3, 2007. Under Section 2244(d)(1)(A), the statute of limitations commenced running on March 5, 2007, and ran until March 5, 2008.[8]

The statute was tolled from March 5, 2007 through April 30, 2007, while the motion to vacate judgment was pending in the trial court simultaneously with merits of the appeal pending in the state appellate court. The statute was not tolled during the pendency of the motion for reconsideration filed on June 28, 2007, as it was not properly filed. Specifically, a motion for reconsideration must be filed before the judgment or order of the court has been approved by the court and filed for journalization or within ten days after the announcement of the court's decision. APP. R. RULE 26 (Thomson Reuters 2009). Petitioner filed the motion for reconsideration two months after the court rendered the decision to dismiss the appeal.

The statute was tolled during the pendency of the motion for delayed appeal filed on July 17, 2007,

---

[8] In 2007, the 45 day period from January 17, 2007 ends on Saturday, March 3, 2007. Petitioner had until the next business day or March 5, 2007 to file his appeal to the Ohio Supreme Court.

9

and decided by the Ohio Supreme Court on September 13, 2007. The statute was further tolled from October 9 through November 13, 2007, during the pendency of the motion to reopen the appeal. Finally, the motion for leave to submit an amended application for reopening did not toll the statute as it was not proffered for filing during the pendency of the statute of limitations.

Exclusive of the 149 days during which the statute was tolled, the statue of limitations expired on July 29, 2008. Petitioner filed his Petition for Writ of Habeas Corpus on January 22, 2009. The Writ was not filed in compliance with Section 2244(d)(1).

*3.     Conclusion*

For these reasons, the Magistrate recommends that the Court grant Respondent's Motion to Dismiss and dismiss the Petition for Writ of Habeas Corpus.

## VI.  PETITIONER'S MOTION FOR A COPY OF RECORD OF TRIAL PROCEEDINGS

Petitioner requested a copy of the record, including all trial transcripts, in anticipation that he will file other collateral challenges to his conviction.

It is well established that a state court must provide an indigent defendant a copy of his or her trial transcripts and court records so that the defendant may prosecute his direct appeal. *Griffin v. Illinois,* 76 S. Ct. 585, 590-591 (1956). However, an appellant does not have an unqualified right to a transcript at the state's expense in a collateral matter. *United States v. MacCollom*, 96 S. Ct. 2086, 2090 (1976).

Petitioner has not persuaded the Court that he is entitled to an additional copy of the transcript in contemplation of further collateral challenge. Failure of the trial court to provide an additional transcript is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. The Magistrate recommends that the Court deny this motion.

## VII.  PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Petitioner seeks judgment as a matter of law on thirty grounds.  Since the Writ was untimely filed and barred from review by the failure to comply with the statute of limitations, the Magistrate recommends that the Court dismiss the motion as moot.

## VIII.  CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court dismiss the Petition for Writ of Habeas Corpus (Docket No. 1), deny the Motion for Copy of Record (Docket No. 5), grant the Motion to Dismiss (Docket No. 8), deny the Motion for Summary Judgment as moot (Docket No. 11) and terminate the referral to the undersigned Magistrate.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Dated:  December 29, 2009

## IX.  NOTICE FOR REVIEW

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, as amended on December 1, 2009, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.